UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTO HERRERA,<br><br>      Plaintiff,<br><br>   vs.<br><br>GILL, et al.,<br><br>      Defendants. | 1:13-cv-01429-AWI-GSA-PC<br><br>FIRST SCREENING ORDER<br><br>ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND<br>(Doc. 1.)<br><br>ORDER FOR CLERK TO SEND PLAINTIFF A CIVIL RIGHTS COMPLAINT FORM<br><br>THIRTY-DAY DEADLINE FOR PLAINTIFF TO SUBMIT FIRST AMENDED COMPLAINT |

**I.      BACKGROUND**

Roberto Herrera ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983.  On September 9, 2013, Plaintiff filed the initial Complaint for this action, which is now before the court for screening.  (Doc. 1.)

**II.     SCREENING REQUIREMENT**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.

§ 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions, none of which apply to § 1983 actions.  <u>Swierkeiwicz v. Sorema, N.A.</u>, 534 U.S. 506, 512 (2002).  Under federal notice pleading, a complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  <u>Doe I v. Wal-Mart Stores, Inc.</u>, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Iqbal</u>, 556 U.S. at 678.  While factual allegations are accepted as true, legal conclusions are not.  <u>Id.</u>  The mere possibility of misconduct falls short of meeting this plausibility standard.  <u>Id.</u> at 678-79; <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009).

**III.   SUMMARY OF COMPLAINT**

Plaintiff is presently incarcerated at Corcoran State Prison (CSP) in Corcoran, California, where the events at issue in the Complaint allegedly occurred.  Plaintiff names as defendants Dr. Gill, LVN Ballesteros, CEO T. Macias, CMO E. Clark, CEO Connie Gipson, and Doe Defendants (LVNs and other CSP staff).  Plaintiff's factual allegations follow.

Plaintiff suffers from severe chronic pain and takes prescribed medication.  On April 17, 2013, LVN Ballesteros refused/failed to deliver Plaintiff's medication and falsely recorded that she had delivered the medication, in violation of Operational Procedure 1050.  On three other occasions -- April 3, 2013, April 24, 2013, and June 7, 2013 -- three other LVNs each refused to issue Plaintiff's 12:00 p.m. medication and falsely indicated on the Medication

Administration Record that they had issued the medication; Plaintiff does not know their names because they were not wearing name tags.  Other unknown LVNs have also refused to deliver Plaintiff's medication when he was out of his cell on a pass.

Plaintiff was interviewed by Dr. Gill regarding Plaintiff's chronic pain and ineffective medication.  Dr. Gill merely gave Plaintiff the same, ineffective treatment.

CSP Health Care CEO T. Macias and CMO E. Clark are legally responsible, because of their positions, for Plaintiff's well-being, and for knowing about and allowing the illegal acts by CSP health care defendants, which have caused Plaintiff to suffer pain.  Several other health care staff members are also responsible, but Plaintiff does not know their names or who they are.

CSP custodial staff members have not been providing Plaintiff with indigent envelopes, which is denial of access to the courts.  Defendant Connie Gipson is legally responsible for Plaintiff's well-being and the denial of his access to the courts, because she is the CEO for CSP and is/was aware of the problem, allowing it to happen.  Several other CSP officials are also responsible, but Plaintiff does not know who they are.

On or about August 18, 2013, Plaintiff was moved from one cell to another, and instead of being provided with a new mattress, he was issued an old, flat, lumpy, and torn mattress, depriving him of sleep.  CSP staff member Connie Gipson is legally responsible for Plaintiff's well-being, including the mattress issue, because she is the CEO of CSP, knew about the matter, allowed it to happen, and failed/refused to resolve it.  There are several other CDCR staff members who are responsible, but Plaintiff does not who they are.

From July 8, 2013 until about August 18, 2013, after being moved to another yard, Plaintiff was not provided with access to law library or allowed to bring with him any of his legal documents for active cases, depriving him of access to the courts.  As of September 1, 2013, several of Plaintiff's legal documents had not been turned over by prison officials. Defendant Connie Gipson is responsible for it, because she is legally responsible for Plaintiff's well-being, including his denial to the courts, because she is the CEO for Corcoran Prison and

///

knew about the issue but allowed it to happen and failed/refused to fix it.  Several other CDCR staff members are also responsible, but Plaintiff does not know who they are.

CSP officials have been tampering with Plaintiff's legal incoming and outgoing mail. On August 26, 2013, Plaintiff's mail from the U.S. Court of Appeal was opened out of his presence.  Some of Plaintiff's outgoing legal mail does not make it to its destination, such as mail to the attorney appointed by the court for Plaintiff's criminal case.  Defendant Connie Gipson is responsible because she is the CEO for Corcoran Prison and is legally responsible for Plaintiff's well-being, knows about the problem, allowed it to happen, and refused/failed to resolve it.  Several other CSP officials are also responsible but Plaintiff does not know who they are.

Plaintiff requests compensatory damages and injunctive relief.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws."  Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress."  Id.

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of

4

which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). "The requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." (Id. at 743-44.)

Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair notice and state the elements of the claim plainly and succinctly. Jones v. Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984). Plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support Plaintiff's claim. Id.

### A. Personal Participation and Supervisory Liability – Defendants Gipson, Macias, and Clark

Plaintiff seeks to hold defendants Connie Gipson, T. Macias, and E. Clark liable in their supervisory capacities. Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Iqbal, 556 U.S. at 676. Liability may not be imposed on supervisory personnel under section 1983 on the theory of respondeat superior, as each defendant is only liable for his or her own misconduct. Id.; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009). A supervisor may be held liable only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff fails to allege facts demonstrating that defendants Gipson, Macias, or Clark personally acted to violate Plaintiff's rights. It is not enough to allege that a defendant is responsible because of his or her position. Moreover, Plaintiff's allegations that these
///

defendants "knew about" or "allowed" the violations, without supporting facts, are vague and conclusory and without more, fail to state a claim.

Therefore, Plaintiff fails to state any claims in the Complaint against defendants Gipson, Macias, and Clark. Plaintiff shall be granted leave to file an amended complaint.

### B. Eighth Amendment Medical Claim

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)). "'If a prison official should have been aware of the risk, but

was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment. Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Plaintiff has demonstrated that he has a serious medical need because he suffers chronic pain. However, Plaintiff's allegations against the defendants do not demonstrate deliberate indifference. Plaintiff alleges that Dr. Gill knew Plaintiff's medication was not effective, yet prescribed him the same treatment, but Plaintiff has not shown that Dr. Gill acted, or failed to act, while knowing about and deliberately disregarding a substantial risk of serious harm to Plaintiff's health. Plaintiff's allegations that the LVNs failed/refused to issue his medication and lied about it are insufficient to state a claim. Plaintiff must allege facts, telling what the LVNs did or said to indicate that they knew about Plaintiff's serious medical need, how they acted or failed to act, and how they deliberately disregarded a substantial risk of harm to Plaintiff. Plaintiff's allegations that the LVNs "failed/refused" to act is ambiguous and does not describe how each LVN personally acted.

Therefore, Plaintiff fails to state a claim against defendants Dr. Gill, LVN Ballesteros, or the unnamed LVNs, and he fails to state an Eighth Amendment medical claim against any of the defendants.

///

///

### C. **Inmate Appeals Process**

To the extent that Plaintiff seeks to state a claim against any of the defendants for failing to respond properly to his inmate appeals, Plaintiff is advised that Defendants' actions in responding to his appeals, alone, cannot give rise to any claims for relief under section 1983 for violation of due process. "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing a prisoner's administrative appeal, without more, are not actionable under section 1983. Buckley, 997 F.2d at 495. Thus, since he has neither a liberty interest, nor a substantive right in inmate appeals, Plaintiff fails to state a cognizable claim for the processing and/or reviewing of his 602 inmate appeals.

### D. **Eighth Amendment Claim -- Conditions of Confinement**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The circumstances, nature, and duration of the deprivations are critical in determining whether

the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Id. at 731.

Plaintiff alleges that he was issued an old, flat, lumpy, and torn mattress, which deprived him of sleep. This allegation, without more, does not rise to the level of a constitutional violation. Therefore, Plaintiff fails to state an Eighth Amendment claim for adverse conditions of confinement based on the mattress he was issued.

### E. Denial of Access to Courts

While Plaintiff has a constitutional right to access the courts, the interferences complained of by Plaintiff must have caused him to sustain an actual injury. Christopher v. Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179 (2002) Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174 (1996); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010); Phillips v. Hust , 588 F.3d 652, 655 (9th Cir. 2009); Jones v. Blanas, 393 F.3d 918, 936 (9th Cir. 2004). The absence of an injury precludes an access claim. Harbury, 536 U.S. at 415-16; Jones, 393 F.3d at 936. Inmates do not have the right to a law library or legal assistance. Lewis, 518 U.S. at 351. Law libraries and legal assistance programs are only the means of ensuring access to the courts. Id. Because inmates do not have "an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Id.

Plaintiff alleges that he was denied access to the law library and his legal documents, that his attorney did not receive the mail sent by Plaintiff, and that Plaintiff was not given indigent envelopes. However, Plaintiff's Complaint is devoid of any facts suggesting any injury occurred. Therefore, Plaintiff fails to state a claim for denial of access to the courts.

### F. Mail Interference

Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). The right to receive mail is subject to substantial limitation, however, and the regulation or policy infringing on the right will be upheld if it is reasonably related to legitimate penological interests. Prison Legal News v. Lehman, 397F.3d 692, 699

(9th Cir. 2005) (citations omitted). Isolated incidents of mail interference or tampering will not support a claim under section 1983 for violation of plaintiff's constitutional rights. See Davis v. Goord, 320 F.3d 346, 351 (2d. Cir. 2003); Gardner v. Howard, 109 F.3d 427, 431 (8th Cir. 1997); Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990).

Prison regulations relating to the regulation of incoming mail are analyzed under the Turner reasonableness standard set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987). Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). The regulation is valid if it is reasonably related to legitimate penological interests. Turner, 482 U.S. at 89. In determining the reasonableness of the regulation, the court must consider the following factors: (1) whether there is a "valid, rational connection between the regulation and the legitimate government interest put forward to justify it," (2) "whether there are alternative means of exercising the right," (3) the impact that the "accommodation of the asserted constitutional right will have on guards and other inmates," and (4) "the absence of ready alternatives." Id. at 89-90. Further, the mere fact that prison officials open and conduct a visual inspection of a prisoner's legal correspondence, which appears to be the case here, does not support a claim for violation of a prisoner's constitutional rights. See Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974); Mitchell v. Dupnick, 75 F.3d 517, 523 (9th Cir. 1996).

Censorship of outgoing prisoner mail is justified if the following criteria are met: (1) the regulation furthers "an important or substantial government interest unrelated to the suppression of expression" and (2) "the limitation on First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." Procunier v. Martinez, 416 U.S. 396, 413 (1974) (overturned by Thornburgh, 490 U.S. 401 only as test relates to *incoming mail* - Turner test applies to incoming mail). Plaintiff's allegation that some of his mail does not arrive at its destination, without more, is insufficient to state a claim.

Therefore, Plaintiff fails to state a claim for interference with his mail.

///

///

### G. Doe Defendants

Plaintiff makes allegations in the Complaint against unidentified or "Doe" defendants. Defendants must be named or otherwise identified before service can go forward. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that his unnamed and unidentified defendants cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names. For service to be successful, the Marshal must be able to identify and locate defendants.

## V. CONCLUSION AND ORDER

The Court finds that Plaintiff's Complaint fails to state any cognizable claims upon which relief may be granted under § 1983. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'shall be freely given when justice so requires.'" The Court will provide Plaintiff with time to file an amended complaint curing the deficiencies identified above. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Plaintiff is granted leave to file an amended complaint within thirty days.

The amended complaint should be brief, but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Fed. R. Civ. P. 8(a); Iqbal, 556 U.S. at 676; Jones, 297 F.3d at 934. There is no respondeat superior liability, and each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77. Plaintiff must set forth "sufficient factual matter ... to 'state a claim that is plausible on its face.'" Id. at 1949 (quoting Twombly, 550 U.S. at 555). Plaintiff must also demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level ...." Twombly, 550 U.S. at 554 (citations omitted). To succeed with the amended complaint, Plaintiff must allege sufficient facts, explaining how each named defendant acted, or failed to act, resulting in the violation of Plaintiff's rights. For example, it is not enough to say that a named defendant "refused" to issue medication; Plaintiff must name the defendant and allege *facts*, *not conclusions*,

explaining what Plaintiff saw or heard and what the defendant did or said, showing with *facts* that the defendant "refused" to issue the medication.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new defendants relating to issues arising after September 9, 2013. In addition, Plaintiff should take care to include only those claims that have been exhausted prior to the initiation of this suit on September 9, 2013. Plaintiff is cautioned that he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff is advised that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F 3d. 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be complete in itself without reference to the prior or superceded pleading, Local Rule 220. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's Complaint, filed on September 9, 2013, is dismissed for failure to state a claim, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a First Amended Complaint curing the deficiencies identified by the Court in this order;
4. Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:13-cv-01429-AWI-GSA-PC;
5. Plaintiff may not add any new, unrelated claims to this action via his amended complaint and any attempt to do so may result in an order striking the amended complaint; and

///

6. If Plaintiff fails to comply with this order, this action will be dismissed for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated:   **January 17, 2014**                            **/s/ Gary S. Austin**
                                                                        UNITED STATES MAGISTRATE JUDGE