UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTO HERRERA,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>GILL, et al.,<br><br>　　　　Defendants. | 1:13-cv-01429-AWI-GSA-PC<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS CASE, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM<br>(Doc. 17.)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

**I.     BACKGROUND**

Roberto Herrera ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. On September 9, 2013, Plaintiff filed the initial Complaint for this action. (Doc. 1.) On January 17, 2014, the court dismissed the Complaint for failure to state a claim, with leave to amend. (Doc. 11.) On March 24, 2014, Plaintiff filed the First Amended Complaint, which is now before the court for screening. (Doc. 17.)

**II.    SCREENING REQUIREMENT**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions, none of which apply to § 1983 actions. Swierkeiwicz v. Sorema, N.A., 534 U.S. 506, 512 (2002). Under federal notice pleading, a complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678. While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

### III.   SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently incarcerated at Corcoran State Prison (CSP) in Corcoran, California, where the events at issue in the First Amended Complaint allegedly occurred. Plaintiff names as defendants Dr. Gill, LVN Ballesteros, CEO Teresa Macias, CMO Dr. Clark, CEO Connie Gipson, and numerous unnamed Doe Defendants (LVNs and other CSP staff). Plaintiff's factual allegations follow.

Plaintiff suffers from severe chronic pain as the result of a gunshot wound. Plaintiff takes prescribed pain medication which needs to be delivered to him three times a day --

///

morning, noon, and evening. Because Plaintiff is in the Security Housing Unit (SHU), LVNs are responsible to deliver the medication to him.

On April 17, 2013, defendant LVN Ballesteros refused/failed to deliver Plaintiff's medication, leaving him to suffer in pain. On April 24, 2013, Doe Defendant LVN (#1) did the same. On June 7, 2013, Doe Defendant LVN (#2) did the same. On April 3, 2013, Doe Defendant LVN (#3) did the same. Many other LVNs have done the same.

On August 28, 2013, Plaintiff saw defendant Dr. Gill, primary care provider, and told the doctor that his prescribed medication was not effective for his pain. Dr. Gill refused to explore other medications, leaving Plaintiff to suffer in pain.

As acting CMO, defendant Dr. Clark is legally responsible for Corcoran Health Care LVNs not delivering Plaintiff's pain medication, and for the primary care provider refusing to explore other medications for Plaintiff, but Dr. Clark did nothing to stop these events from happening. As acting CEO, defendant T. Macias is also legally responsible and knew or should have known about these events, but did nothing to stop them from happening. Many other CDCR Health Care staff members are also personally responsible, but Plaintiff does not know their names.

Plaintiff also alleges that as an indigent prisoner, he was not provided with the required number of envelopes, denying him access to the courts. Defendant Connie Gipson is legally responsible because she is the custody CEO at CSP and knew or should have known that Plaintiff did not receive enough envelopes, but she did nothing to stop it from happening. Many other CDCR custody staff members, including CSP prison staff, floor staff, Captains, mail room staff, Lieutenants, acting Corcoran CEO, etc., are responsible for Plaintiff being denied access to the courts, but Plaintiff does not know their names.

On or about August 18, 2013, Plaintiff was moved from one building to another, and floor staff issued him a mattress in very bad condition, torn, old, lumpy, and flat, instead of a new mattress, depriving Plaintiff of sleep. As CEO, Connie Gipson is responsible and knew or should have known that Plaintiff was issued a bad mattress, but she did nothing to stop it. Many other CSP staff members are also responsible, but Plaintiff does not know their names.

While housed in the SHU, Plaintiff had some active court cases pending and was approved to use the prison law library. However, from July 8, 2013 to August 9, 2013, Plaintiff was not provided access to the law library. Plaintiff's legal documents were taken from him on July 8, 2013, and he was moved to another yard. His documents were not returned to him until August 25, 2013, and many of the documents were missing. As CEO, defendant Connie Gipson was responsible and knew or should have known about these incidents, but she did nothing about it. Many other Corcoran prison staff members are also responsible, but Plaintiff does not know their names.

While at CSP, Plaintiff's incoming and outgoing mail was tampered with by CSP officials who sometimes opened Plaintiff's mail out of his presence before delivering it to him, sometimes did not deliver it at all, and sometimes did not mail out some of his outgoing legal mail, preventing Plaintiff from meeting his legal deadlines. As CEO, defendant Connie Gipson was responsible and knew or should have known about these incidents, but she did nothing about it. Plaintiff filed prison grievances as required, without resolution of the issues.

Plaintiff requests monetary damages and injunctive relief.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

///

///

### A.     Personal Participation and Supervisory Liability – Defendants Gipson, Macias, and Clark

Plaintiff seeks to hold defendants Connie Gipson, Teresa Macias, and Dr. Clark liable in their supervisory capacities. Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Iqbal, 556 U.S. at 676. Liability may not be imposed on supervisory personnel under section 1983 on the theory of respondeat superior, as each defendant is only liable for his or her own misconduct. Id.; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009). A supervisor may be held liable only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff fails to allege facts demonstrating that defendants Gipson, Macias, or Clark personally acted to violate his rights. It is not enough to allege that a defendant is responsible because of his or her position. Moreover, Plaintiff's allegations that these defendants "knew about" or "allowed" the violations, without supporting facts, are vague and conclusory and without more, fail to state a claim.

Therefore, Plaintiff fails to state any claims in the First Amended Complaint against defendants Gipson, Macias, and Clark.

### B.     Eighth Amendment Medical Claim

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in

further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment. Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . .

that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Plaintiff has demonstrated that he has a serious medical need because he suffers severe chronic pain resulting from a gunshot wound. However, Plaintiff's allegations against Defendants do not demonstrate deliberate indifference. Plaintiff alleges that Dr. Gill knew Plaintiff's medication was not effective, yet prescribed him the same treatment, but Plaintiff has not shown that Dr. Gill acted, or failed to act, while knowing about and deliberately disregarding a substantial risk of serious harm to Plaintiff's health. Plaintiff's allegations that the LVNs failed/refused to issue his medication, without more, are insufficient to state a claim. Plaintiff has not alleged facts showing what the LVNs did or said to indicate that they knew about Plaintiff's serious medical need, how they acted or failed to act, and how they deliberately disregarded a substantial risk of harm to Plaintiff. Plaintiff's allegations that the LVNs "failed/refused" to act is ambiguous and does not describe how each LVN personally acted.

Therefore, Plaintiff fails to state a claim against defendants Dr. Gill, LVN Ballesteros, and the unnamed LVNs and other staff members, and fails to state an Eighth Amendment medical claim against any of the Defendants.

### C.   Eighth Amendment Claim -- Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The circumstances, nature, and duration of the deprivations are critical in determining whether

the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Id. at 731.

Plaintiff alleges that he was issued a mattress in very bad condition, torn, old, lumpy, and flat, instead of a new mattress, depriving him of sleep. This allegation, without more, does not rise to the level of a constitutional violation. Therefore, Plaintiff fails to state an Eighth Amendment claim for adverse conditions of confinement based on the mattress he was issued.

### D.   **Denial of Access to Courts**

While Plaintiff has a constitutional right to access the courts, the interferences complained of by Plaintiff must have caused him to sustain an actual injury. Christopher v. Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179 (2002); Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174 (1996); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010); Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009); Jones v. Blanas, 393 F.3d 918, 936 (9th Cir. 2004). In order to meet the requisite actual injury showing, a plaintiff must plead facts alleging "a nonfrivolous legal claim had been frustrated or was being impeded." Lewis, 518 U.S. at 353; see also Christopher, 536 U.S. at 415. "The complaint should 'state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a) just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it.'" Gonzalez v. Diaz, No. 1:10–CV–01287–GBC PC, 2011 WL 2671535 (E.D.Cal. July 6, 2011) (quoting Christopher, 536 U.S. at 417–18). The absence of an injury precludes an access claim. Harbury, 536 U.S. at 415-16; Jones, 393 F.3d at 936.

Inmates do not have the right to a law library or legal assistance. Lewis, 518 U.S. at 351. Law libraries and legal assistance programs are only the means of ensuring access to the courts. Id. Because inmates do not have "an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Id.

Plaintiff alleges that he was denied access to the law library and his legal documents, was not given enough indigent envelopes, and sometimes the mailroom staff failed to mail out

some of his outgoing legal mail, preventing Plaintiff from meeting his legal deadlines. Plaintiff's vague and conclusory allegation that he was prevented from meeting legal deadlines is not sufficient to show the injury required to state a claim for denial of access to the courts. Therefore, Plaintiff fails to state a claim for denial of access to the courts.

### E.  Mail Interference

Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). The right to receive mail is subject to substantial limitation, however, and the regulation or policy infringing on the right will be upheld if it is reasonably related to legitimate penological interests. Prison Legal News v. Lehman, 397F.3d 692, 699 (9th Cir. 2005) (citations omitted). Isolated incidents of mail interference or tampering will not support a claim under section 1983 for violation of plaintiff's constitutional rights. See Davis v. Goord, 320 F.3d 346, 351 (2d. Cir. 2003); Gardner v. Howard, 109 F.3d 427, 431 (8th Cir. 1997); Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990).

Prison regulations relating to the regulation of incoming mail are analyzed under the Turner reasonableness standard set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987). Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). The regulation is valid if it is reasonably related to legitimate penological interests. Turner, 482 U.S. at 89. In determining the reasonableness of the regulation, the court must consider the following factors: (1) whether there is a "valid, rational connection between the regulation and the legitimate government interest put forward to justify it," (2) "whether there are alternative means of exercising the right," (3) the impact that the "accommodation of the asserted constitutional right will have on guards and other inmates," and (4) "the absence of ready alternatives." Id. at 89-90. Further, the mere fact that prison officials open and conduct a visual inspection of a prisoner's legal correspondence, which appears to be the case here, does not support a claim for violation of a prisoner's constitutional rights. See Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974); Mitchell v. Dupnick, 75 F.3d 517, 523 (9th Cir. 1996).

Censorship of outgoing prisoner mail is justified if the following criteria are met: (1) the regulation furthers "an important or substantial government interest unrelated to the suppression

of expression" and (2) "the limitation on First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." Procunier v. Martinez, 416 U.S. 396, 413 (1974) (overturned by Thornburgh, 490 U.S. 401 only as test relates to *incoming mail* - Turner test applies to incoming mail).

Plaintiff's vague allegations that unnamed CSP officials sometimes opened his mail out of his presence before delivering it to him, sometimes did not deliver his mail at all, and sometimes failed to mail out some of his outgoing legal mail, are insufficient to state a cognizable claim for mail interference. Therefore, Plaintiff fails to state a cognizable claim for interference with his mail.

## V.   CONCLUSION AND ORDER

The Court finds that Plaintiff's First Amended Complaint fails to state any cognizable claims upon which relief may be granted under § 1983. The Court previously granted Plaintiff leave to amend the complaint, with ample guidance by the Court. Plaintiff has now filed two complaints without stating any claims upon which relief may be granted under § 1983. The Court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Therefore, **IT IS HEREBY RECOMMENDED** that pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e), this action be dismissed with prejudice for failure to state a claim upon which relief may be granted under § 1983, and that this dismissal be subject to the "three-strikes" provision set forth in 28 U.S.C. § 1915(g). Silva v. Vittorio, 658 F.3d 1090, 1098 (9th Cir. 2011).

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v.

Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

    Dated:   **March 6, 2015**                      **/s/ Gary S. Austin**
                                                                     UNITED STATES MAGISTRATE JUDGE